## VINCENZO v. DELAWARE & HUDSON CO.

(Supreme Court, Appellate Division, Third Department. May 6, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action by a servant for injuries caused by being struck by a railroad rail while loading rails on flat cars without a man on the car to prevent them from falling back, evidence *held* sufficient to take the case to the jury on the question whether a reasonable man would not have anticipated that such an accident would have happened.

2. SAME—FELLOW SERVANTS—"ACT OF SUPERINTENDENCE."

Where a railroad company's employé was a track supervisor, and had general supervision of the work of loading rails on cars, and it did not appear that there was any limitation on his authority, he was exercising an act of superintendence while overseeing the work of loading rails, within the employer's liability act (Laws 1902, p. 1748, c. 600), though designated as a foreman.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6791.]

3. SAME.

    Whether a faulty act or omission is negligence·in the discharge of the duty of the master as such, or is a detail of the work, may depend on the manner in which the work is carried on, as well as on the rank and position of the employé to whom the performance of the work is intrusted.

    Appeal from Trial Term, Clinton County.

    Action for personal injuries by Auiti Vincenzo against the Delaware & Hudson Company. Judgment for defendant on verdict· directed by the court, and plaintiff appeals. Reversed, and new trial granted.

    Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

    Ralph G. Barclay, for appellant.

    Lewis E. Carr, for respondent.

    PER CURIAM. This action is brought by plaintiff to recover damages for personal injuries. The action is under the provisions of the employer's liability act (Laws 1902, p. 1748, c. 600). At the close of all of the evidence defendant's counsel moved· for a direction of a verdict, and the motion was granted "on the ground that a reasonable man would not have anticipated that such an accident as this would have happened."

    The plaintiff, a boy of 17 years, was employed by the defendant, and was one of a gang of men engaged in loading rails upon flat cars under the direction of a foreman. The rails were 30 feet long, and each weighed about 800 pounds. At the time of the accident three cars had been loaded, and there were 38 or 40 rails on the fourth car. At first 21 men were engaged in loading the rails. Two of these were stationed on the car being loaded, one at each end, with an iron bar to place the rails in position, and to prevent them from slipping or rolling off the car. Just prior to the accident four of the men were sent away by Garvin, the foreman, to repair a switch, and the two men were ordered off the car, and directed to assist the others in lifting and throwing on the rails. The plaintiff's account of how the accident happened is as follows:

    "After we picked up that rail, we threw it up high like this. The boss told them to heave it on the car, and the rail went crooked. * * * Part was off the car, and part was on. I was standing near the south end. They told us to hold it, and then the rail slipped and he said 'Look out!' and the men on the other side did get out of the way and the men at my end got off. I tried to get under the car. The rail caught me, fell on me. It fell on my legs."

    Bessetti, a fellow servant, testified:

    "What occurred there was they threw the rail up, and it struck the pile of rails that was on the car then. The south end swung back. We all stepped up and shoved it back again, and the north end went down, and it threw the north end back, and the rail fell off. I was at the south end."

    Fred Duprey, another fellow servant, testified: That he was near the south end of the rail. "We threw it over, and our end didn't get quite as far as the other, but the rail got on and balanced on the pile of rails that was on the car. There was quite a pile of rails on the front part of the car."

· Scarchillo, another witness for the plaintiff, testified that he was near the north end of the rail; that his end went up first; that "it stopped a little bit, and began to shake and come down again. I cannot say how long it would be there. About two or three minutes and it slipped back again." He also testified:

"When rails were thrown up that day, these men on the car stopped them with their iron bars from slipping sometimes. I did see the men this day, the men who were on the cars, do something else but straighten out the rails and put them in place. Sometimes the rails goes crooked when it goes on, and they put a bar under it and hold it. Lots of times the rails begin to come back, and they hold it with the iron bar. They hold them from coming back lots of times."

Antoine McKenville, one of the men employed upon the cars, testified:

"I was not on the car where the accident happened. I had been on the car before. I was on the second car. Upon the car I move the rails from the edge of the car. I helped to move the rails. I protected the rails from going back off the car; stopped the rails from slipping back. I did that with my hands, or with a bar if I had a chance. I would have to step back when a rail was thrown up about a foot and a half, as quick as the rail landed I could get it. I did stop rails as they started to slip back."

John Boyle, the section foreman and a witness for the defendant, testified that the north end went a little further and swung the south end around; "that Garvin holloed to hang on to the rail, and the men did hold it up a little while, probably two or three seconds, and the north end came back." Garvin was a witness for the defendant. He testified that the rail laid in an oblique position after it was thrown, and there was a period of time when it was practically still. "I should judge it was a second or two."

The evidence we think made a question for the jury whether a reasonable man would not have anticipated that such an accident would happen. There can be no doubt but the jury would have been entitled to find that the usual method of doing the work was not followed; that Garvin, the foreman, knew that the rail was likely to slip or fall back, and that it would be dangerous to attempt to load the rail without a man upon the car or some other means of preventing an accident.

The question of the defendant's liability to the plaintiff for the negligence of Garvin was not raised on the trial or discussed upon the argument of this appeal; but I think it can be properly said that Garvin was exercising an act of superintendence within the scope of the employer's liability act. The work he ordered to be done was not a detail, requiring no oversight. He had been track supervisor for 14 years on that division of the road. He had general supervision and charge of the work. He directed the manner of prosecuting it, and no evidence was given showing any limitation upon his authority. We think the evidence in the case conclusively establishes that Garvin, although designated as foreman, was exercising superintendence with the authority or consent of the defendant. Whether a faulty act or omission is negligence in the discharge of the duty of the master as such, or is a detail of the work, may depend on the manner in which

the work is carried on as well as the rank and position of employé to whom the performance of the work is intrusted. Eaton v. N. Y. C. & H. R. R. R. Co., 163 N. Y. 391, 57 N. E. 609, 79 Am. St. ᴫep. 600. Our conclusion is that, upon a fair consideration of the evidence, it was for the jury to say whether or not the defendant was guilty of negligence which caused the accident.

The judgment should be reversed and a new trial granted, costs to abide the events.